**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF 175 NORTH LOCUST HILL UNIT 1704, LEXINGTON, FAYETTE COUNTY,  KENTUCKY** | **Case No.** <u>  5:23-mj-5391  </u> |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41 FOR A**
**WARRANT TO SEARCH AND SEIZE**

I, Jason Moore, being duly sworn, do hereby depose and state:

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search the following residence: 175 North Locust Hill Drive Unit #1704, Lexington, Fayette County, Kentucky; (all more particularly described below in Attachment B, incorporated herein).

2.      I am a duly sworn Special Agent (SA) of the United States Drug Enforcement Administration (DEA) and have been assigned as such since 2009.  In that capacity, I am authorized to apply for a warrant under Rule 41 of the Federal Rules of Criminal Procedure.

3.      I am currently assigned to the Lexington Resident Office (LRO) and have been since August 2015.  My current duty assignment includes, but is not limited to, investigating complex drug conspiracies and organizations and individuals involved in the possession of and trafficking in controlled substances.  Prior to my current assignment

1

with the DEA, I was a felony prosecutor in the 44th and 22nd Judicial Circuits in the state of Kentucky from approximately 2004 to 2009.  I am authorized and have the responsibility to investigate and arrest persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846) and money laundering; (18 U.S.C. § 1956 and 1957).

4.      During my tenure with DEA, I have participated in numerous investigations involving violations of federal narcotics laws.  I have attended schools and have been instructed in many aspects of narcotics investigations and am familiar with the narcotic laws promulgated under Title 21 of the United States Code and federal money laundering laws promulgated under Title 18 of the United States Code.  I am aware of the following information from numerous sources, including but not limited to my own personal observations and participation in this investigation and my review and analysis of oral and written reports by members of the Lexington Police Department (LPD).  I have initiated and/or participated in surveillance, the operation and debriefing of numerous drug dealers, drug users, and informants, performed both physical and electronic surveillance, and executed search warrants.  Further, I have analyzed records documenting the purchase and distribution of illegal drugs, and the concealment of illegal narcotics profits.

5.      Based upon my training and experience, I know:

a.  That it is common for drug traffickers to maintain multiple premises from which their illegal business is conducted.  Drug traffickers also store narcotics, narcotics proceeds, and records relating to the trafficking of narcotics at their residences and/or businesses and the residences and/or businesses of their relatives and co-conspirators;

2

b.  That large scale narcotics traffickers must maintain on hand large amounts of U.S. currency in order to maintain and finance their on-going narcotics business;

c.  That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, passports, ATM receipts, travel records, cellular telephone records, vehicle titles, property leases, property purchase agreements, financial transaction receipts, banking records, tax documents and other papers relating to the procurement, distribution, storage and transportation of controlled substances and other documents related to their drug trafficking and money laundering activities.  These records include the telephone numbers of customers and sources, the amount of controlled substances distributed to various customers, along with running totals of debts owed by those customers. They also maintain paraphernalia utilized to cut and package controlled substances. These aforementioned items are commonly maintained in locations to which narcotic traffickers have frequent and ready access, i.e. homes, garages, outbuildings on the property, businesses, and automobiles;

d.  That it is common for large scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and/or businesses for ready access and to conceal them from law enforcement authorities;

e.  That persons involved in large scale drug trafficking operations conceal within their residence and/or business caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles and other items of value and/or proceeds of drug sales and evidence of financial transactions, or spending of large sums of money acquired from engaging in drug trafficking activities and that these items are also secured in safety deposit boxes;

f.  That when drug traffickers amass large amounts of proceeds from the sales of drugs, the traffickers attempt to legitimize these profits.  That to accomplish these goals, drug traffickers utilize domestic and foreign banks and/or financial institutions and their attended services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, "shell" corporations, and business "fronts."  Records of these activities are commonly kept in the drug traffickers' residences and/or businesses, and in areas over which the drug traffickers exercise dominion and control;

g.  That drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses and/or telephone numbers of their criminal associates in drug trafficking;

h.  That during drug transactions, traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product.  That these traffickers usually maintain these photographs at their residences and/or other properties that they control;

i.  That drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities.  This equipment includes, but is not limited to, digital display pagers, mobile telephones, speed dialers, electronic telephone books, electronic date books, computers, money counters, electronic surveillance equipment, eavesdropping equipment, police radio scanners, items that detect electronic equipment utilized by law enforcement and portable communication devices;

j.  That cellular telephones utilized by drug traffickers often contain evidence of their crimes including, but not limited to, the contact names and numbers of co-conspirators and electronic communications saved on the device;

k.  Based upon my experience in narcotics investigations, I know persons who traffic in controlled substances frequently maintain firearms to protect both the controlled substances and proceeds derived from their sale from other narcotics traffickers and law enforcement authorities.

6.      This affidavit is submitted in support of an application for a search warrant to search the below listed property and to search for and seize certain items (more fully described in Attachment A, incorporated by reference herein):

**175 North Locust Hill Drive, Unit #1704, Lexington, Kentucky**- is an apartment unit at Raintree Apartments in Lexington, Kentucky utilized by Eugene Fishback. Unit #1704 has a red door with black numbering above the door depicting "1704". The unit is immediately adjacent to the right of unit "1702" when facing from the parking lot. The unit is leased to Johnelle Birdsong, an

individual whose surety in a 2023 criminal matter was provided by Eugene Fishback. I seek permission to open and search any safes, lock-boxes, or similar containers found inside the location, and property as further described in "Attachment A".  A photograph of this unit has been attached and marked "Attachment B".

7.      I know, based on my knowledge, training, experience, and consultation with legal counsel, that it is a violation of 21 U.S.C. § 841(a)(1) to distribute, or to possess with intent to distribute, any mixtures or substances containing a Schedule II controlled substance (including, but not limited to fentanyl and methamphetamine); and that it is a violation of 21 U.S.C. § 846 to conspire to distribute a controlled substance.

8.      This affidavit is based on my personal knowledge and involvement in the investigation, and from information I have received from other persons involved in the investigation, including DEA Special Agents and Task Force Officers (TFOs) and LPD personnel.  The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause to support the requested search warrants.

## PROBABLE CAUSE

### 175 N. Locust Hill Drive, Unit #1704, Lexington, Kentucky

9.      Eugene Laron Fishback and his drug trafficking organization (DTO) are the current targets of a DEA investigation. Fishback is currently indicted and has pending

criminal charges in Fayette County Criminal Cases 19-CR-007629, 20-CR-00575, and

21-CR-00942-001 for felony charges including Enhanced Aggravated Trafficking

Controlled Substance First Degree Fentanyl, Trafficking Controlled Substance First

Degree Fentanyl, Trafficking Controlled Substance First Degree Cocaine, Convicted

Felon in Possession of a Handgun, and Persistent Felony Offender First Degree. Fishback

has been previously convicted of multiple felonies to include Trafficking in Controlled

Substance First Degree Cocaine and Convicted Felon in Possession of a Handgun in

respective Fayette County Criminal Cases 14-CR-00612 and 15-CR-00838-002.

10.     On December 8, 2021, your affiant and other members of the DEA LRO

interviewed a cooperating defendant (CD 1) seeking consideration for criminal charges

related to trafficking methamphetamine. CD 1 identified that he/she had a relationship

with an individual in Lexington, Kentucky known to him/her as "Geno". CD 1 stated

he/she would typically pick up 2 to 3 pounds of "ice", referring to methamphetamine, and

a few "zips", referring to ounces of fentanyl, from "Geno" on a consistent basis. CD 1

identified "Geno's" residence with specificity during that interview and stated that he/she

had been introduced to "Geno" through a Tedi Hawkins. Based on this information,

investigators were aware that the "Geno" referenced was in fact Eugene Fishback.

11.     CD 1 stated that Fishback had only been residing at that particular

residence for a short period having previously moved from a residence off Richmond

Road following a police interaction. CD 1 stated he/she had traveled to Fishback's new

residence the day prior to his/her arrest to retrieve a pound of methamphetamine. This

was the same methamphetamine with which CD 1 was found in possession of by

members of law enforcement. CD 1 advised that Fishback had "fronted" CD 1 the methamphetamine with CD 1 owing Fishback money for the illegal drugs. CD 1 stated that Fishback received his drugs "through the mail" but could not state specifically if that meant the United States Post Office, FedEx, or other similar businesses.

12.     In October 2023, affiant interviewed a second cooperating defendant (CD 2) who sought consideration for the federal offense of Conspiracy to Possess with Intent to Distribute Methamphetamine. Previously, DEA investigators had seized 632.3 gross grams of suspected fentanyl pills which had been stored at CD 2's residence located in Lexington, Kentucky. Those pills were subsequently submitted to the DEA Mid Atlantic Laboratory for analysis and determined to be 530.18 grams of a substance containing both phenylethyl and fentanyl. An examination by affiant of CD 2's cellular telephone seized in conjunction with his/her arrest by affiant revealed a contact listed as "Geno" with telephone number 859-699-8543. Text messages between CD 2's device and telephone number 859-699-8543 revealed communications involving the sale of pills from CD 2 to the individual utilizing telephone number 859-699-8543 assigned contact ID "Geno".

13.     On October 4, 2023, affiant requested subscriber information for telephone number 859-699-8543 from service provider AT&T via a DEA administrative subpoena. That same day AT&T responded that telephone number 859-699-8543 was subscribed to "Brothers Brand" at 240 Plaza Drive Suite 220, Lexington, Kentucky. This is the location of the "The Porch Barber Shop" which was utilized by brothers Nicolas Petite Frere and Marc Petite Frere to receive large shipments of methamphetamine on behalf of the Mario

Sanchez Barba drug trafficking organization. The contact name for telephone number 859-699-8543 was listed by AT&T as Nicolas Petite Frere with a contact email of "theporchbarbershop@gmail.com". Marc Petit Frere and Mario Sanchez Barba were both convicted in the United States District Court for the Eastern District of Kentucky for drug trafficking offenses and sentenced to prison in 2023 for 228 months and 240 months respectively.

14.    On October 11, 2023, members of LPD were called to Stoney Brooke Apartments Unit #179 located at 174 North Mt. Tabor Drive, Lexington, Kentucky in reference to an eviction. Lexington deputy constables had executed a court authorized eviction of unit #179 at Stoney Brooke Apartments. After gaining entry into the residence, Stoney Brook Apartments personnel located multiple firearms within the unit. After locating the firearms, LPD was contacted for assistance. After arriving at unit #179, Stoney Brooke Apartments personnel advised law enforcement that they had also discovered suspected narcotics among the property they were removing from the unit. LPD located amongst the property removed from unit #179 seven plastic bags containing suspected fentanyl pills which weighed in total approximately 1.6 pounds. Members of LPD applied for and received a state search warrant authorizing law enforcement to search unit #179 of Stoney Brook Apartments. In addition to the suspected fentanyl, officers also located and seized four firearms as well as 39.2 gross grams of suspected marijuana. These items were subsequently booked into LPD property and evidence. Mail matter was located inside the apartment in the names of Eugene Fishback and Tedi Hawkins along with photographs of both individuals. The suspected fentanyl was

submitted to the Kentucky State Police (KSP) Forensic Laboratory in Frankfort, Kentucky for analysis. A tablet from 1 of the 7 bags was examined and determined to contain fentanyl, a Schedule II controlled substance.

15.     On November 6, 2023, affiant provided Stoney Brooke Apartments management with a DEA Administrative Subpoena requesting rental records for unit #179. That same day management with Stoney Brooke Apartments provided investigators the requested information. Management detailed that unit #179 was rented entirely online by a "Blake Faulk" who utilized a date of birth of October 5, 1995, and provided Texas driver's license 35198992 in concert with his application.  Affiant consulted a reliable law enforcement database which revealed no driver's license in Texas utilizing number 35198992 associated with the name "Blake Faulk".  Stoney Brooke Apartments management stated that they never met in person with "Faulk" and that he failed to complete the in-person application on the listed move-in date of July 31, 2023. Management provided "Faulk" with keys to unit #179 by leaving them inside the open unit at his request per an email.

16.     Management identified that subsequent to the keys being provided for unit #179 they observed a black male and black female utilizing the residence. One management team member displayed a photograph from his/her phone depicting Fishback and stated this was the male staying in apartment #179 immediately prior to the eviction. Affiant provided a separate DEA surveillance photograph of Fishback to a second management team member who also confirmed this was the black male they observed utilizing unit #179. This management team member also stated that the couple

using unit #179 frequently were observed driving a blue Hyundai Elantra that they parked at the complex without ever having received a parking pass. Investigators were aware that Fishback drove a Hyundai Elantra with Kentucky tag 312 NJJ registered in the name of Hawkins.

17.     During discussions with Stoney Brooke management they stated that they believed that the individuals associated with unit #105 were also involved with the activities of unit #179. On November 27, 2023, affiant provided management of Stoney Brooke Apartments with a DEA Administrative Subpoena requesting rental records for unit #105. Management provided the requested information which identified that Devonte Wood as the tenant of record. However, management stated it was Fishback who took possession of the keys following the lease. Management had photocopied Fishback's identification card at that time he received the key and it was included in the rental records. Fishback utilized Kentucky identification card F08-789-721 at the time he received the keys to unit #105.

18.     On October 19, 2023, DEA SA Christy McHugh applied for and received a state search warrant authorizing investigators to receive real time location data for telephone number 859-699-8543. This is the telephone number which had been identified through a review of CD 2's cellular device as being utilized by "Geno" in support of drug trafficking activities. On October 20, 2023, service provider AT&T began providing location information for that telephone number.

19.     On October 25, 2023, members of the DEA LRO utilized this information to confirm that telephone number 859-699-8543 was utilized by Fishback. That day,

investigators utilized location data for that telephone number to locate Fishback at multiple sites in Lexington, Kentucky throughout the day. For example, at approximately 11:49 am, SA Christy McHugh observed Fishback walking south in Fayette mall in the direction of anchor store Dillards. At 11:52 am, location data for telephone number 859-699-8543 placed the device in the Fayette Mall parking lot with a certainty of 182 meters. At approximately 12:09 pm, affiant observed Fishback travel in a vehicle to Speedway located at 2490 Nicholasville Road, Lexington, Kentucky where he exited the vehicle and entered the convenience store. Several minutes later, Fishback was observed to return to the vehicle. The vehicle remained at this location until it traveled across Nicholasville Road at approximately 12:23 pm to Five Guys restaurant located at 2467 Nicholasville Road, Lexington, Kentucky. At 12:19 pm, location data for telephone number 859-699-8543 placed the device on Larkin Road with a certainty of 792 meters, a distance of approximately 2100 feet from Speedway.

20.     At approximately 2:07 pm, DEA surveillance personnel followed Fishback as he approached vehicles parked on York Street, Lexington, Kentucky from the vicinity of house #132. Fishback and a second black male were observed to enter a blue Hyundai sedan with Kentucky tag 312 NJJ registered to Tedi Hawkins at 957 Lane Allen, Drive, Lexington, Kentucky. This vehicle departed the area with surveillance being maintained of Fishback in the Hyundai Elantra. Investigators subsequently have learned that Hawkins is currently indicted in Fayette County [Kentucky] state court case 21-CR-00942-002 for felony drug trafficking offenses. DEA continued surveillance of Fishback and the Hyundai Elantra that day using a combination of physical and electronic

11

surveillance which was terminated at approximately 5:15 pm. The Hyundai Elantra is same vehicle described by management of Stoney Brooke Apartments as being utilized by the tenants of unit #179 where the fentanyl was recovered following their eviction.

21.     At approximately 7:55 pm, location information for telephone number 859-699-8543 placed the device in the area of Raintree Apartment Homes located at 175 North Locust Hill Drive, Lexington, Kentucky with a certainty of 488 meters. At approximately 8:00 pm, affiant located the Hyundai Elantra with Kentucky tag 312 NJJ parked in front of building 17 at the apartment complex. Affiant maintained surveillance of that building for the next hour with location data for that telephone number continuing to reflect its presence in close proximity to that address. On November 6, 2023, at approximately 7:15 am, affiant confirmed the vehicle's presence at that residence. At approximately 8:09 am, SA Christy McHugh confirmed that location data for telephone number 859-699-8543 reflected that the device was still in the area of Raintree Apartment Homes.

22.     On November 6, 2023, affiant was made aware by LPD detectives that an individual had suffered a suspected drug overdose the previous weekend to which she had ultimately passed away.  Investigators spoke to her significant other who stated that the deceased had a source of supply for illegal drugs who utilized the street name "Geno". This individual further stated that "Geno" utilized telephone number 859-699-8543 and identified social media pages known by investigators to have photographs of Fishback. Telephone number 859-699-8543 is the same telephone number investigators identified as being carried and utilized by Fishback.

23.     On November 7, 2023, at approximately 11:00 am, affiant applied for and received a Kentucky state search warrant from Fayette County Kentucky District Court Judge Bruce T. Bell authorizing DEA investigators to place a GPS tracking device on Fishback's Hyundai Elantra with Kentucky tag 312 NJJ. At approximately 2:00 pm, DEA investigators used location data for telephone number 859-699-8543 to attempt to locate Fishback and the Hyundai Elantra for the purpose of placing a GPS tracking device on the vehicle. At that time, location data for telephone number 859-699-8543 placed the device in the area of Fayette Mall located at 3401 Nicholasville Road, Lexington, Kentucky with a certainty of 443 meters.

24.     At approximately 2:59 p.m., investigators located Fishback standing outside the mall near the Outback restaurant. Investigators observed Fishback meet with two individuals before approaching and accessing a Chevrolet Cruze with temporary tag C089716. This temporary tag was observed to have an expiration date of January 4, 2024. Investigators observed Fishback place items into the trunk of the vehicle that he retrieved from the rear passenger's seat. Following that action, Fishback entered the driver's seat of the vehicle and departed the area. At approximately 3:17 pm, affiant placed the court authorized GPS tracking device on Fishback's Hyundai Elantra as it was parked at Raintree Apartments located at 175 North Locust Hill Drive, Lexington, Kentucky.

25.     In the morning hours of November 8, 2023, location data for telephone number 859-699-8543 reflected that the device traveled to Louisville, Kentucky. Affiant conducted a spot check of Fishback's Hyundai Elantra and confirmed GPS tracking information that it remained stationary at Raintree Apartments in Lexington, Kentucky.

26.     On November 8, 2023, affiant applied for and received a Kentucky state search warrant from Fayette County [Kentucky] District Court Judge Gunther authorizing investigators to place a GPS tracking device on the Chevrolet Cruze with temporary tag C089716 with expiration date January 4, 2024 for a period of 60 days. On November 9, 2023, at approximately 6:00 am, DEA LRO personnel placed a GPS tracking device on the vehicle as it was parked at Raintree Apartments located at 175 North Locust Hill Drive, Lexington, Kentucky.

27.     On November 21, 2023, members of the DEA LRO utilized location data for Fishback's Chevrolet Cruze to identify the vehicle parked in the area of 175 N. Locust Hill Drive, Lexington, Kentucky. At approximately 9:00 am, investigators observed the trunk open to Fishback's Hyundai Elantra which was parked outside unit #1704 and the brake lights flash to the Chevrolet Cruze, indicating it was possibly unlocked via remote. At that time, investigators saw a black male exit unit #1704 and briefly enter the Elantra before returning back inside the apartment. At approximately 9:54 am, another investigator observed the black male, now positively identified to be Fishback, exit unit #1704 along with Hawkins. The duo entered the Chevrolet Cruze with Fishback driving. The pair departed the area in the vehicle. Members of the LRO conducted physical and electronic surveillance of the vehicle at that time. Investigators observed the vehicle as it made maneuvers consistent with "heat checks". The vehicle was observed to make multiple pull offs onto side streets and parking lots before traveling to Tudor's Biscuit World located at 757 East New Circle Road, Lexington, Kentucky. The vehicle next traveled to Kroger located at 890 Richmond Road, Lexington, Kentucky. This parking lot

is located across Locust Hill Road near Raintree Apartments. In the south side of the lot near Hooters investigators observed a male exit a Toyota Camry with Kentucky tag B0D515 and enter the back seat of the Chevrolet Cruze. This individual only stayed inside the Cruze for a brief period before returning to his Toyota. After the male returned to the Toyota, investigators observed both vehicles exit the lot. This meeting was consistent with a street level drug transaction. After the meeting with the male driving the Toyota Camry, the Chevrolet Cruze returned to the area of unit #1704 at Raintree Apartments. Surveillance was not maintained of the Toyota Camry. At approximately 12:46 pm, affiant observed Fishback exit unit #1704, enter the Chevrolet Cruze, and again depart the parking lot in the vehicle. The Chevrolet Cruze traveled from the parking lot onto Locust Hill before pulling into the nearby parking lot of Richmond Place. Investigators observed the Chevrolet Cruze park in the parking lot between Hooters and Tire Discounters next to a Nissan sedan that appeared to be running. A male was then viewed entering Fishback's vehicle. After remaining inside the Cruze for about 1 minute, the male exited Fishback's vehicle and entered the Nissan sedan. Both vehicles exited the lot at that time.

28.     On November 27, 2023, at approximately 8:45 am, location information for the Hyundai Elantra placed the vehicle near unit #1704 of the Raintree Apartments located at 175 N. Locust Hill Drive, Lexington, Kentucky. Affiant conducted a spot check of the address and observed the vehicle parked at the unit. Immediately adjacent to the Hyundai was a blue Kia with a temporary tag one alpha/numeric different than the temporary tag affixed to Fishback's Chevrolet Cruze. Minutes later affiant traveled to

200/204 Mousas Way, Lexington, Kentucky. This was the address location information

for Fishback's Chevrolet Cruze had reported being parked at overnight. At that time,

affiant observed Fishback walking down the front steps of the duplex toward his

Chevrolet Cruze which was parked in the driveway of the duplex. At approximatle4y

12:55 pm, affiant conducted a spot check of Raintree Apartments and now observed the

Chevrolet Cruze to be parked with the other two vehicles previously identified at unit

#1704.

      29.     On November 28, 2023, members of the LRO established surveillance in

the vicinity of 175 N Locust Hill Drive, unit #1704. At approximately 12:47 pm,

investigators observed Fishback and a black female exit apartment unit #1704. SA

Trueblood observed Fishback carry a garbage bag to a communal dumpster and dispose

of it. At the same time, agents observed Fishback enter the Chevy Cruze and departed the

area. At that time, SA Michael Trueblood retrieved the garbage bag that Fishback placed

in the dumpster and secured it in his vehicle. Fishback would ultimately travel to 751

Lane Allen Road, Lexington, Kentucky. At approximately 1:35 pm, investigators

observed Fishback and the black female exit the Chevy Cruze and walk toward the back

of the building located at 751 Lane Allen Road, Lexington, Kentucky. At approximately

2:12 pm, investigators observed a red Chevrolet Silverado with Kentucky license plate

8220CH arrive at 751 Lane Allen Rd, Lexington, Kentucky. A white male that was

later identified as Kolby Burdine exited the truck and approached the front door of 751

Lane Allen Rd. Burdine knocked on the front door and waited for several minutes with

no one answering. Burdine next returned to the truck and departed the area.

30.     At approximately 2:22 pm, investigators observed Fishback return to the Chevrolet Cruze from the area of 751 Lane Allen and drive to a neighboring business identified as The Locker Room Sporting Goods, located at 739 Lane Allen Rd, Lexington, Kentucky. At approximately 2:25 pm, affiant observed the aforementioned red Chevy Silverado return and park near 751 Lane Allen Rd, Lexington, Kentucky. At that time, Burdine walked from his truck to the parked Chevy Cruze where he entered the passenger side of the vehicle. After a period of several minutes, the Chevrolet Cruze moved its position and returned to 751 Lane Allen Road .At approximately 2:31 pm,  Burdine exited Fishback's vehicle and entered the rear driver side. At the same time, the same black female observed previously exited 751 Lane Allen Road and entered the front passenger side of the Chevy Cruze. After approximately 5 minutes, Burdine returned to his truck and departed the area. Surveillance was maintained of Burdine until a traffic stop was conducted on the vehicle by members of LPD on Cromwell Way, Lexington, KY.

31.     During the traffic stop, three individuals including Burdine were identified as being present in the truck. A trained LPD drug odor detection canine was deployed and alerted to the odor of narcotics emanating from inside the truck. During a search of Burdine's truck, members of LPD located and seized as evidence approximately 3.5 blue pills marked "M30" that were concealed in the glovebox. These pills were consistent with the type of pill containing fentanyl that were seized from Fishback's Stoney Brooke Apartment. Burdine ultimately claimed ownership of the pills but did not identify from whom he received them. Burdine was subsequently charged in Fayette County Kentucky

District Court Case 23-F-03505 for the offenses of Possession Controlled Substance First Degree Carfentanil of Fentanyl Derivatives and Possession of Marijuana. Burdine has a listed address for this case as 2033 Clays Mill Road, Lexington, Kentucky and provided his home phone as telephone number 859-691-1889.

32.     Following the transaction between Fishback and Burdine, members of the LRO received toll data via an administrative subpoena for telephone number 859-699-8543, utilized by Fishback, for the date of November 28, 2023. From approximately 12:54 pm to 2:27 PM on that date, Fishback's telephone number 859-699-8543 engaged in a series of voice calls and text messages with telephone number 859-691-1889. A check of a reliable law enforcement database revealed telephone number 859-691-1889 to be associated with a "Kristina Rogers" at an address of 2033 Clays Mill Road, Lexington, Kentucky. This is the same address utilized by Burdine on his arrest citation later that day. Additionally, the Facebook account for "Kristina Marie", located at 222.facebook.com/kristina.marie.mf.rogers, lists that individual as being in a relationship with Kolby Burdine. This confirmed communications between Burdine and Fishback surrounding the transaction which led to the seizure of suspected fentanyl pills from Burdine's truck.

33.     Following the arrest of Burdine, SA Trueblood and Task Force Officer Josh Baker examined the contents of the trash bag that Fishback had disposed of at the Raintree Apartments. Agents located two plastic bags that contained suspected marijuana residue, an opened package of leaf wrapped cigars, and a receipt from Raising Canes at 2201 War Admiral Way, Lexington, Kentucky dated November

24, 2023 at 1:17 pm. A review of GPS data for Fishback's Hyundai Elantra confirmed its presence at that particular Raising Canes during the time period reflected on the receipt. This corroborated the trash being the same discarded from the residence by Fishback.

34.     On December 4, 2023, members of the LRO again conducted surveillance of unit #1704 at 175 North Locust Hill Drive, Lexington, Kentucky. At approximately 1:07 pm, investigators observed Fishback arrive at the residence alone in the Chevrolet Cruze and enter the apartment. At approximately 1:40 pm, Fishback returned to the Chevrolet Cruze from unit #1704 and departed the area. Throughout the remainder of the day, Hawkins was observed to come and go from unit #1704 in the Hyundai Elantra. At approximately 6:00 pm, Fishback returned back to unit #1704 and met with Hawkins who was in and around the Hyundai Elantra socializing with approximately three other males. Location data for the Hyundai Elantra and Chevrolet Cruze for the period November 29, 2023 to present reflects that both vehicles continue to consistently visit 175 North Locust Hill Drive, Lexington, Kentucky for extended periods of time. The Hyundai Elantra's tracking device can identify "stops" of the vehicle in excess of sixty minutes. In the previous 36 hours, that particular vehicle has had 4 stops in exceeding sixty minutes near unit #1704 of Raintree Apartments for durations in excess of six hours, one hour, one hour, and nine hours respectively.

35.     On December 4, 2023 at approximately 11:35 pm, GPS location information placed the Chevrolet Cruze near unit #1704 where it remained overnight. At approximately 6:45 am on December 5, 2023, affiant conducted a spot check of the

address and observed the Chevrolet Cruze to still be parked in close proximity to unit #1704.

36.     On December 4, 2023, affiant provided management for Raintree Apartments a DEA Administrative Subpoena requesting rental records for unit #1704 for the period November 1, 2023 to present. Management provided the requested information which identified that unit #1704 was rented by Johnell Birdsong in February 2023 for a period of 12 months. Birdsong did not identify any other individuals residing in the unit and did not request a parking pass. Agents are aware that Birdsong was charged in Fayette County Kentucky District Court Case 23-F-01465 on 4-7-2023 with the offenses of Assault 4th Degree, Strangulation 1st Degree, and Unlawful Imprisonment. In that matter, the listed surety for Birdsong was Eugene Fishback with a date of birth February 11, 1992 and utilizing Kentucky Driver's License number F08-789-721. Birdsong has a Kentucky driver's license B09879026 with a photograph attached. This individual has never been observed at unit #1704 of Raintree Apartments during any LRO surveillance. On her lease application, Johnelle Birdsong listed her current address as 111 Cornwallis Drive, Georgetown, Kentucky. A check of a reliable law enforcement database revealed this is the same address utilized by Fishback associate Thelonious Birdsong, also a convicted felon in the state of Kentucky.

37.     On December 5, 2023, members of the LRO conducted physical surveillance of unit #1704 at 175 North Locust Hill Drive, Lexington, Kentucky. At approximately 10:11 am, investigators observed the Chevrolet Cruze arrive and stop near the Hyundai Elantra already parked at this location. While inside the vehicle, the driver

20

appeared to be conversing with Hawkins who investigators observed on the patio of unit #1704. At approximately 10:20 am, investigators observed Fishback exit the Chevrolet Cruze and enter the residence at the same time as Hawkins exited the apartment and took trash to a community dumpster. Hawkins returned inside following that activity. At approximately 10:25 am, Fishback exited the apartment and entered the driver's seat of the Chevrolet Cruze. Shortly after, Hawkins exited the residence and appeared to secure the door of unit #1704 with a key. At 10:27 am, the parties departed the residence with investigators using physical and electronic means to conduct surveillance of the vehicle.

38.     The vehicle traveled to interstate 75 where it proceeded north to Georgetown, Kentucky. At approximately 11:18 am, investigators observed the Chevrolet Cruze stop and Fishback outside the vehicle at Lexway BP located at 53 Falls Creek Drive, Richmond, Kentucky. The vehicle was observed to be parked near a black Audi SUV which was subsequently identified to have Kentucky license plate AVG939. A check of reliable law enforcement database revealed this vehicle to be registered to Robert Phelps at 140 Salem Court, Georgetown, Kentucky. At approximately 11: 20 am, Fishback was observed to meet with the driver of the Audi SUV at the driver door of the vehicle with Fishback appearing to lean inside the open cabin. The driver of the Audi SUV was observed to be a light skin male with a beard estimated to be in his twenties. After the brief meeting, Fishback returned to his vehicle and departed the area. Investigators observed immediately return to interstate 75 and travel south back towards Lexington, Kentucky.

39.     Investigators followed the Audi SUV away from the meeting and observed it travel directly to 140 Salem Court, Georgetown, Kentucky. A check of a reliable law enforcement database revealed Nicholas Ryan Phelps with a date of birth of December 22, 2000, to be one of the individuals associated with this address. On May 26, 2023, Phelps was issued a traffic citation in Scott County District Court Case 23-T-01230 which listed his address as 140 Salem Court, Georgetown, Kentucky. Investigators reviewed Phelps photograph associated with his Kentucky driver's license P17894697 and observed him to have an appearance consistent with person who met Fishback at Lexway BP.

40.     Based on Fishback's travels from his residence in Lexington, Kentucky to this gas station in Georgetown, Kentucky where he was observed to briefly meet with individual before returning to Lexington, Kentucky, it is affiant's belief that this meeting was a narcotics transaction. This brief meeting was similar to what definitely observed as narcotics transaction between Fishback and Burdine on November 28, 2023.

41.     Following this suspected transaction, the parties were next observed at unit #1704 at 175 North Locust Hill Drive, Lexington, Kentucky at approximately 12:15 pm. The parties returned in the Chevrolet Cruze and were observed to enter the unit together with Hawkins utilizing her keys.

42.     Affiant is aware the sophisticated drug traffickers frequently utilize fictitious or nominee names in conjunction with documents that might otherwise assist law enforcement in tracking their locations. At present, it is known that Fishback does not utilize his own name for subscriber information for his telephone, registration

information for his vehicles, and leasing information for his residences. It is affiant's belief that Fishback is currently utilizing 175 North Locust Hill Drive unit #1704, Lexington, Kentucky as a residence to store drugs, drug proceeds, or other items reflecting evidence of drug trafficking crimes. Investigators have observed Fishback travel from this location to engage in suspected narcotics deals and have seized suspected fentanyl directly from one such customer whose communications were independently connected to Fishback. Fishback has consistently engaged in the distribution of controlled substances to include methamphetamine and fentanyl in the Eastern District of Kentucky for the previous two years.  It is reasonable to believe that this residence to be searched contains evidence of criminal acts in addition to that of drugs or drug proceeds. This residence may additionally contain ledgers reflecting outstanding suppliers, customers, and outstanding debts of each. It is highly likely that this residence will contain drug trafficking supplies such as processing equipment, cutting agents, adulterants, and retail distribution supplies. Additionally, operational locations such as these frequently contain discarded communication devices which have been cycled through in efforts to compartmentalize communications between organizational levels and thwart identification and interception by members of law enforcement.

.

## REQUEST FOR SEALING

43.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary

because the warrant is relevant to an ongoing investigation and not all of the targets of

this investigation will be searched at this time.  Premature disclosure of the contents of

this affidavit and related documents may have a significant and negative impact on the

continuing investigation and may severely jeopardize its effectiveness.

## CONCLUSION

44.     Based on the above, I believe that there is probable and cause to believe that:

a.  Eugene Fishback and others have engaged in criminal conduct in the Eastern
    District of Kentucky, by conspiring to distribute Schedule II controlled substances
    and distributing Schedule II controlled substances, in violation of 21 U.S.C. §§
    841 and 846.

b.  Eugene Fishback utilizes a residence located at 175 North Locust Hill Drive unit
    #1704, Lexington, Kentucky and it is reasonable to believe evidence of drug
    trafficking crimes is present in this location. I am aware from my training and
    experience, that drug traffickers often keep items as listed in Attachment A and
    other items of contraband at their residences and/or locations they maintain access
    to, including "stash locations".

45.     Therefore, I believe there is probable cause to believe that contraband, the
fruits of crime, or things otherwise criminally possessed, including controlled substances,
drug proceeds, records, ledgers, and other items more specifically set forth in Attachment
A, which relate to the illegal drug activity by Eugene Fishback, and others will be found
and seized upon searching the above listed addresses.

**IT IS REQUESTED** that the Court authorizes the search of this specified location in Lexington, Kentucky and the Court authorizes the search of any safes, lock-boxes, or similar containers found inside the residence and to search any appurtenances or out buildings on the property.

The above-statement is true and correct to the best of my knowledge, information, and belief and I request that a search warrant be issued for the above-described property.

Respectfully submitted,

/s/ Jason D. Moore
_____
Jason D. Moore
Special Agent, DEA

Attested to by affiant by reliable electronic means per FRCrP 4.1 on this 6th day of December, 2023.

_____
Matthew A. Stinnett
U.S. Magistrate Judge